The next case today is Bautista Cayman Asset Company v. Asociacion de Miembros de la Policia de Puerto Rico, appeal number 201445. Attorney Diaz-Lopez, please introduce yourself now on the record and proceed with your argument. Yes, for the record, Attorney Ivan Diaz-Lopez, I am an attorney for the appellant, Asociacion de Miembros de la Policia de Puerto Rico, in English, Puerto Rico Police Members Association. Should I proceed? Please do. Okay, I request that one minute of my time be saved for rebuttal. On the first issue on appeal, the police association filed a motion to dismiss with the district court for lack of subject matter jurisdiction that was fact-based and requested from the district court leave to engage in jurisdictional discovery. We submit that the court abuses discretion when it denies our request for jurisdictional discovery since there was in the record a sufficiently colorable case. That appellee, Bautista Cayman, may not be the rightful owner of the credit he was trying to collect, but merely a front to fraudulently manufacture federal diversity jurisdiction. By refusing the police association's request for jurisdictional discovery and proceeding to deny its motion to dismiss, the district court ignored the second ground for appellant's motion to dismiss. That appellee may not be the rightful owner of the credit, in other words, that it lacked standing to bring suit. In looking at the record, I couldn't find where you ever explained precisely to the district court what it was you hoped to find in the discovery and why it was you thought you would define that. It seemed to me you just said you had this general discovery you wanted to do. Well, as I argued in my brief and in my reply brief, there was contradictory evidence in the record before the district court to the effect that in the pleadings, in the complaint, the appellee alleged that they had bought the credit directly from the FDIC. My question may not, maybe I wasn't clear enough, so let me try again. What precisely did you tell the, not referring to your briefs on appeal to us, but what did you tell the district court below that you wanted to find, that you needed the discovery to look for and that you had reason to believe might exist? Well, I wanted to do discovery regarding how they got the credit, because the credit was not bought by them from the FDIC. It was bought by their holding company, and according to their affidavit they filed in the district court, the holding company then designated the note to them instead of designating it to a sister company that is a Puerto Rico corporation, which is the ones who normally they do business with in Puerto Rico. Now, of course, if they had designated it to a Puerto Rico corporation, the holding company, there would be no diversity in the jurisdiction. So it is my understanding, or I wanted to dig into the facts of why and how and if there were just cause to designate that note to the plaintiff, or if it was just a chance for jurisdictional purposes. Did you ever mention the issue of standing to the district court? I don't think I mentioned the word standing, but basically the standing is a conclusion that comes from the fact that you're the owner of the note, the legitimate owner of the note or not. It was put in those terms, Your Honor. Can I continue? Please do. Okay, thank you, Your Honor. In the 2000 case of Valentin versus Hospital Bellavista, this court stated that a Rule 12b motion, and I quote, is like a large umbrella over spreading a variety of different types of challenges to subject matter jurisdiction. Some examples of this wide variety of challenges to a score subject matter jurisdiction based on decision of this court are those grounded on rightness and mootness. We submit that since the doctrine of standing is intimately related to those of mootness and rightness, it is wholly proper for a Rule 12b motion to be based on a lack of standing by a plaintiff to bring suits in federal court. Our second issue on appeal is that the district court erred when it granted a police motion to dismiss based on the pleadings of the police association's counterfeit, which was an invocation for the district court to use the civil law equity power switch on the Puerto Rico law courts can use to modify the terms of a contract due to exigent circumstances. The district court based its ruling in the decision of this court in the 2011 case of Puerto Rico Telephone Company versus Sprint, in which it held that under Puerto Rico equity powers, a court could not modify the terms of a contract. We submit the Sprint decision was wrongly decided and should be overturned. It contradicts the 2008 decision of the Puerto Rico Supreme Court in Sucesión Talaveras versus Banco Popular, where the Supreme Court of Puerto Rico ruled that under Puerto Rico civil law, a court had equity powers to modify the terms of a contract if to enforce its original terms would be to condone an act of bad faith on the part of the creditor. The Supreme Court and this court has long held that when sitting in diversity, a federal court must apply state law as interpreted by the highest court of the state, whether it agrees or not with this decision. Accordingly, the district court's partial judgment dismissing the police association's counterclaim must be overturned. This, in turn, requires that the final judgment of the district court must be also overturned. That's it. The economic crisis in the mid 2000s. We've had other terrible catastrophes as well in Puerto Rico that clearly are affecting values, the COVID, the hurricanes. I mean, that's sort of the logic of your argument, right? That all of those attempts at foreclosure would go by the wayside, given the logic of your argument. Isn't that true? Well, the foreclosure argument is secondary to the collection effort. Basically, we are. First of all, we're not saying that this is the Supreme Court of Puerto Rico said this could be done. OK, so it's not my proposition. That's the decision of the Supreme Court of Puerto Rico in appropriate cases. I'm not asking from from from the order of appeals to rule that my client has a right to modify the contract. That's not the scope of my argument here. I just wanted to make to revoke the district court, which ruled that under no circumstances in Puerto Rico, under Puerto Rico law, a contract could be modified. That's not just the case. That's not the case. That's not the law in Puerto Rico. Under certain circumstances, it can be modified. Now, I just want the opportunity that the court denied me to have a hearing where I can present the evidence so the court can decide whether in the particular circumstances of this case, it should or should not be modified. That's basically our argument. Thank you. Are there any more questions for counsel? Thank you. I believe you've reserved a minute of your time. Thank you, Attorney Diaz-Lopez. Please mute your camera and mute your audio. And Attorney Munez, if you could please unmute your device and introduce yourself on the record. Good morning, Your Honors. Mauricio Munez Luciano on behalf of APELY. May I please report? As Brother Counsel just stated, there are two very specific issues on appeal here today. The first issue on appeal is the district court abuse of discretion in denying the motion for jurisdictional discovery. The other side is not even appealing the opinion in order that denied the motion to dismiss for lack of diversity jurisdiction. The second issue on appeal is that the district court erred in dismissing the counterclaim because of an alleged erroneous interpretation of the Puerto Rico case law. In doing so, the appellant also failed to appeal and we believe thus waived the judgment that granted Bautista's motion for summary judgment in this case. Now, I will address the first issue, the issue of the jurisdictional discovery posed by the other side. Before the district court, as Judge Cayeta well asked, appellant requested jurisdictional discovery to determine that diversity jurisdiction existed in this case. They did not allege any issue of standing before the district court. At the same time that the other side filed the motion for jurisdictional discovery, they did file a motion to dismiss for lack of subject matter jurisdiction, which included exhibits and all that. The matter was fully briefed before the district court and a ruling was made that there was diversity jurisdiction. Now, before this court, they're making a different argument, which is the standing argument. Basically, what they're saying is that whether Bautista Cayman is a rightful owner of the credit facilities at issue. Again, that is a different issue from what they post in the district court. Regardless of that, there's ample record in the district court that confirms the district court's ruling that Bautista had standing to sue and is able to collect on the debt, for example. And I start by the appellant's own counterstatement of facts in opposition to their motion for summary judgment. In there, the appellant put forth several counterstatement of facts. One of them was number three, that on March 27, 2015, Plaintiff Bautista, as a company acquired from the FDIC, acting as reserve for Doral, the loan agreement entered into the appellant with Doral. There's other two counterstatement of facts proposed by the appellant itself, acknowledging that Bautista is the rightful owner of the credit facilities here. In addition to appellant's own admission before the district court, then you have Bautista's own motion for summary judgment. In there, we've had several statement of uncontested facts, which not only prove that Bautista is the rightful owner of the credit facilities here, but included the evidence, like the endorsed notes and all that, that proved the standing issue. In fact, as a district court, well-reasoned in the opinion and order for the summary judgment, the appellant did not oppose Bautista's summary judgment motion. So, it is uncontested that Bautista is the rightful owner of the credit facilities here, and thus has standing to sue in this case. That should dispose of the standing argument brought here for the first time by appellant before this court. Now, I want to address the second issue on appeal, which is the dismissal of their counterclaim. I want to start by saying that the appellant is only, the only issue before this court is the dismissal of the first cause of action, which is the one based on the equity powers. Because the second and third causes of action were dismissed by the district court based on the federal statute, nothing was mentioned in the appellant's brief regarding the dismissal of the second and third causes of action under the federal statute. Now, before going into the argument of why the dismissal was proper, I want to put the contractual relationship in its proper context. This is a loan agreement. The main obligations between the parties was the bank to loan money to the appellant, and the appellant to make the monthly installments until it repaid the loan. The issue here is the contract here or the loss of value on the parcel of land that appellant brings up is an issue of the collateral in case there is a default of the obligations as it so happens here. Having put the relationship in its proper context, there was no error committed by the district court in dismissing the counterclaim. First, if you go to the first cause of action, it is a cause of action for unjust enrichment. There's no mention about any other doctrine in that first cause of action. In dismissing that cause of action, the district court correctly interpreted Puerto Rico case law that when there's a contract between the parties, the unjust enrichment doctrine does not apply. That is black letter law in Puerto Rico, and that wasn't changed. The Banco Popular versus Sucesión Talavera case did not change that, which is also perplexing as to why the appellant requests the reversal of the Sprint.com case, which in that case, it only dealt with the unjust enrichment doctrine to what I'm posing here that when there's a contract between the parties, there's no reason to go into equitable powers or to that doctrine. The Banco Popular versus Sucesión Talavera case did not have to do with the unjust enrichment case. In that sense, it was properly dismissed, that first cause of action for unjust enrichment. I want to point out that regarding the Rebux Extantibus doctrine, which is the one used in Banco Popular versus Sucesión Talavera case, that wasn't brought before the district in the counterclaim. There's no such cause of action of modifying the terms of the contract based on Rebux Extantibus. It's just the unjust enrichment doctrine. But be it as it may, even applying this Banco Popular versus Sucesión Talavera case, the district court properly dismissed that argument also. Why? Because the unforeseeable event proposed by the appellant at the district court level was the economic crisis of 2008. According to appellant, that would cause the loss of value in their collateral. This Puerto Rico Supreme Court has actually dealt with that issue and has stated that the economic crisis by itself is not sufficient or an unforeseeable event to make the Rebux Extantibus doctrine applicable and thus being able to modify terms of a contract. Now, before this court, appellant brings two other additional events that were not brought before the district court. Now, before this court, they bring Hurricanes Maria and Irma of 2017. That wasn't brought before the district court, to be clear. However, the district court below in Puerto Rico has also stated, based on Puerto Rico case law, that not even Hurricane Maria and Irma are unforeseeable events under the Rebux Extantibus doctrine that will allow a court to come into and modify terms of a contract. The third and final issue brought by the appellant in this case was COVID. That COVID now is an event that will allow a court to come in and modify the terms of the contract. I think at this time, it suffices to say that the COVID pandemic came after the judgment in this case, and it was not properly before the district court. And so, in that sense, our position is this even happened after the judgment of this case, so we shouldn't even be considering that issue. And with that, Your Honor, I'm open to any questions that you have. If not, we rest on our breaths. Are there any questions for counsel? None. Thank you, Mr. Munoz. Attorney Munoz, please mute your device at this time. And Attorney Diaz-Lopez, could you please turn on your camera and your audio? And you have one minute of rebuttal. Please introduce yourself. Yes, Attorney Diaz-Lopez again for appellant. Briefly, Your Honor, I want to refer the court to our reply brief. Specifically, because I only have a minute. Specifically, from pages 17 to 19, in which we explain that the Supreme Court of Puerto Rico in the Talavera case specifically points out that when the equity remedy is fashioned under civil law equity powers, it is not different causes of action. Like counsel suggests, that a congressional judgment causes a cause of action. The revocee stantibus is a cause of action. As a matter of fact, he stated that, ironically, that that case was decided on the revocee stantibus. That's not the case. We cite the exact quoting from the case of the Supreme Court. That case was brought to the Supreme Court under the allegations of revocee stantibus. And the court itself said that they could decide it on the other grounds of equity. And they went on to decide the case, not on the revocee stantibus, which was pleaded to them, but under the other grounds of equity. Time has expired. Thank you, Mr. Lopez. I rest on my reply brief, Your Honor. Thank you. That ends the argument in this matter.